UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEBORAH TAVENNER,

                              Plaintiff,

                  v.

INTERNATIONAL BUSINESS MACHINES
CORP.,

                              Defendant.

No. 21-CV-6345 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Shannon Liss-Riordan, Esq.
Lichten & Liss-Riordan PC
Boston, MA
*Counsel for Plaintiff*

Matthew W. Lampe, Esq.
Jones Day
New York, NY
*Counsel for Defendant*

Anthony J. Dick, Esq.
Jones Day
Washington, DC
*Counsel for Defendant*

Craig Friedman, Esq.
Jones Day
Atlanta, GA
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Deborah Tavenner ("Plaintiff" or "Tavenner"), a former employee of International

Business Machines Corp. ("IBM"), brings this Action, pursuant to 28 U.S.C. § 2201 (the

Declaratory Judgment Act or "DJA"), to declare invalid two provisions of an arbitration

agreement Plaintiff signed upon her termination from IBM as unenforceable.  (*See generally*

Compl. (Dkt. No. 1).)   Before the Court is Plaintiff's Motion for Summary Judgment pursuant to

Federal Rule of Civil Procedure 56, (*see* Pl.'s Mot. for Summ. J. and Mem. of Law in Supp.

("Pl.'s Mem.") (Dkt. No. 13)), as well as Defendant's Cross-Motion to Dismiss Plaintiff's

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), (*see* Not. of Mot. (Dkt. No.

23)).[1, 2]  For the reasons stated herein, Defendant's Motion is granted in its entirety and

Plaintiff's Motion is denied as moot.

## I.  Background

### A.  Allegations and Materials Appropriately Considered

As a threshold matter, the Court must determine whether it may consider either Plaintiff's

arbitration agreement, (*see* Decl. of Craig S. Friedman ("Friedman Decl.") (Dkt. No. 27) Ex. A

("Arbitration Agreement") (Dkt. No. 27-1)), or the arbitration award decision resulting

therefrom, (*see* Decl. of Shannon Liss-Riordan ("Liss-Riordan Decl.") (Dkt. No. 15) Ex. 4

("Arbitration Award") (Dkt. No. 15-4)), at this stage of the litigation.

#### 1.  Applicable Law

Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the

pleadings themselves," because "[t]o go beyond the allegations in the [c]omplaint would convert

---

[1] The Motion at Docket Number 13 was filed under seal; its companion was filed at Dkt. No. 16 with necessary redactions for public viewing.

[2] Under Local Civil Rule 7.1, all motions are to include "(1) [a] notice of motion . . ., which shall specify the applicable rules or statutes pursuant to which the motion is brought, and shall specify the relief sought by the motion" as well as "(2) [a] memorandum of law . . . ." Local Civ. R. 7.1(a)(1)–(2).  Plaintiff did not file a separate notice of motion.  However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted).  Given such discretion, as well as the Second Circuit's "strong 'preference for resolving disputes on the merits,'" *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (quoting *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)), the Court does not deny Plaintiff's Motion out of hand.

the Rule 12(b)(6) motion to dismiss into one for summary judgment pursuant to [Rule] 56."

*Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002)

(citation omitted).  However, "the Court's consideration of documents attached to, or

incorporated by reference in the [c]omplaint, and matters of which judicial notice may be taken,

would not convert the motion to dismiss into one for summary judgment."  *Id.* (citations

omitted); *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling

on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . . ,

documents incorporated into the complaint by reference, and matters of which a court may take

judicial notice" (quotation marks omitted)); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir.

2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the

pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and

matters of which judicial notice may be taken." (alteration omitted) (quoting *Samuels v. Air

Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993))).

   "Moreover, 'where a document is not incorporated by reference, the court may

nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby

rendering the document integral to the complaint.'"  *Alvarez v. County of Orange*, 95 F. Supp. 3d

385, 394 (S.D.N.Y. 2015) (alteration omitted) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622

F.3d 104, 111 (2d Cir. 2010)).  As the Second Circuit has reiterated, "a plaintiff's reliance on the

terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's

consideration of the document on a dismissal motion; mere notice or possession is not enough."

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis omitted).

   The final test for the consideration of extrinsic evidence is the Parties' view on the

authenticity thereof.  Put simply, "even if a document is 'integral' to the complaint, it must be

clear on the record that no dispute exists regarding the authenticity or accuracy of the document" for it to be considered at the motion to dismiss stage. *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). Relatedly, "[u]nder Federal Rule of Evidence 201, a 'court may judicially notice a fact that is not subject to reasonable dispute.'" *Dixon v. von Blanckensee*, 994 F.3d 95, 102 (2d Cir. 2021) (quoting Fed. R. Evid. 201(b)). "Such facts must either be (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.* (citation and quotations omitted).

### 2. Applying the Law

#### a. Arbitration Agreement

Because "[a] motion brought under Rule 12(b)(6) challenges only the 'legal feasibility' of a complaint," *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558 (2d Cir. 2016) (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)), "[i]n most instances where [the] exception [permitting review of extrinsic documents at this stage] is recognized, the incorporated material is a *contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls*, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint," *Glob. Network Commc'ns*, 458 F.3d at 157 (emphasis added). The Second Circuit has "recognized the applicability of this exception where the documents consisted of emails that were part of a negotiation exchange that the plaintiff identified as the basis for its good faith and fair dealing claim, or consisted of contracts referenced in the complaint which were essential to the claims." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 107–08

(2d Cir. 2021) (citations omitted) (first citing *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011); and then citing *Chambers*, 282 F.3d at 153 n.4 (2d Cir. 2002)).

Defendant argues that the Court may consider the 6-page Arbitration Agreement attached to its motion papers, (*see* Arbitration Agreement), because it is "incorporated by reference in or 'integral' to the complaint," (Def.'s Mem. of Law in Supp. of Def.'s Mot. and Opp. of Pl.'s Mot. ("Def.'s Mem.") 3 n.1 (Dkt. No. 24) (citing *DiFolco*, 622 F.3d at 111)).  Plaintiff does not appear to disagree.  (*See generally* Pl.'s Response Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. and Opp. of Def.'s Mot. to Dismiss ("Pl.'s Response Mem.") (Dkt. No. 29).)  To the contrary, Plaintiff also submits this agreement—albeit as six pages of a 27-page "Separation Agreement," (*see* Liss-Riordan Decl. ¶ 28; Liss-Riordan Decl. Ex. 2 ("Separation Agreement"), at 22–27 (Dkt. No. 15-2))—thereby evincing mutual assent as to the document's accuracy.[3]  Moreover, given that the Complaint as well as the Parties' briefing papers quote extensively from the Arbitration Agreement, the Court considers the Arbitration Agreement incorporated by reference and/or integral to the complaint and therefore properly within the Court's consideration at this stage. *See Nat'l Ass'n of Pharmaceutical Mfrs. v. Ayerst Labs.*, 850 F.2d 904, 910 n.3 (2d Cir. 1988) (holding that the magistrate judge was authorized to treat a letter as incorporated by reference into complaint when, inter alia, the plaintiffs "quote[d] the entire text of the [l]etter" in a memorandum of law); *Pincover v. J.P. Morgan Chase Bank, N.A.*, No. 21-CV-3524, 2022 WL

---

[3] The Court notes that while both Parties refer to the Arbitration Agreement as having been signed or executed, (*see* Liss-Riordan Decl. ¶ 28 (referring to the "Separation Agreement that Plaintiff signed"); Friedman Decl. ¶ 2 (referring to "a true and correct copy of the Separation Agreement executed by Deborah Tavenner")), neither submission actually bears a signature, (*see* Arbitration Agreement 3; Separation Agreement 24).  Additionally, the two versions sport different dates.  (*Compare generally* Arbitration Agreement (dates provided on the bottom of each page), *with generally* Separation Agreements.)  However, given that the substantive provisions are otherwise identical, and given a lack of argument on this issue, the Court nevertheless, considers the terms of the agreement accurate.

864246, at *5 (S.D.N.Y. Mar. 22, 2022) (considering a deposit agreement as integral to the

complaint, which asserted claims for breach of contract that were premised on, inter alia, the

deposit agreement's terms); *Cheng v. Canada Goose Holdings Inc.*, No. 19-CV-8204, 2021 WL

3077469, at *5 (S.D.N.Y. July 19, 2021) ("These conference call transcripts are clearly integral

to [the] [p]laintiff's [a]mended [c]omplaint here, given that [the] [p]laintiff heavily relies on and

quotes many statements made by [certain defendants on the call] in the [a]mended [c]omplaint

for both of their claims.  [The] [p]laintiff also did not object to [the] [d]efendants citing these

transcripts in their memorandum of law supporting their motion to dismiss.").

### b.  Arbitration Award

Under the Federal Rules of Evidence, a court may take judicial notice of a fact outside of

the pleadings provided that the fact "can be accurately and readily determined from sources

whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Pursuant to this rule,

"courts have regularly taken judicial notice of arbitration awards . . . in considering a motion to

dismiss . . . ."  *Cox v. Perfect Bldg. Maint. Corp.*, No. 16-CV-7474, 2017 WL 3049547, at *3

(S.D.N.Y. July 18, 2017) (collecting cases); *see also Dr.'s Assocs., Inc. v. Patel*, No. 18-CV-

2386, 2019 WL 3916421, at *2 n.5 (S.D.N.Y. July 19, 2019) (same).  Because Plaintiff does not

dispute the authenticity of the Arbitration Award—once again, Plaintiff herself submitted it in

support of her Motion—the Court is permitted to take judicial notice of the award at this early

juncture.  *See Purjes v. Plausteiner*, No. 15-CV-2515, 2016 WL 552959, at *4 (S.D.N.Y. Feb.

10, 2016) (collecting cases in which courts have taken judicial notice of arbitration awards); *see

also Caldarera v. Int'l Longshoremen's Ass'n, Local 1*, 765 F. App'x 483, 485 n.2 (2d Cir. 2019)

(summary order) (finding no error in district court's taking judicial notice of an arbitration

award).  Accordingly, the Court takes notice of the Arbitration Award for purposes of
Defendant's Motion to Dismiss.

### B.  Factual Background

Unless otherwise stated, the following facts are drawn from the Complaint and are
assumed to be true for the purpose of resolving the instant Motion.  *See Div. 1181 Amalgamated
Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021)
(per curiam).

### 1.  Plaintiff, Her Employer, and Her Termination

Plaintiff, who now resides in Sherrills Ford, North Carolina, worked for IBM for
approximately 25 years until 2018.  (Compl. ¶¶ 3, 7.)  At the time of her termination, Plaintiff
was 55 years old and worked for IBM as a Software Client Leader.  (*Id.* ¶ 7.)

IBM is a "multinational technology company" based in Armonk, New York, "that offers
services and goods ranging from computing" to "cloud platforms" to "advanced analytics tools."
(*Id.* ¶ 4.)

Plaintiff alleges that, broadly speaking, "IBM has pushed out thousands of older workers
over a several year period, while hiring younger workers . . . in order to better compete with
newer technology companies, such as Google [Alphabet], Facebook [now Meta], Amazon, and
others."  (*Id.* ¶ 9.)[4]  "Following a multi-year investigation, on August 31, 2020, the EEOC issued
a class[-]wide determination in which it found reasonable cause to believe that IBM
discriminated against older employees during the period 2013 to 2018."  (*Id.* ¶ 10.)  Plaintiff
states that she "fell victim" to this "years-long companywide discriminatory scheme."  (*Id.* ¶ 8.)

---

[4] Plaintiff notes that this scheme has been laid out in far further detail in another suit
against IBM in this district sounding in similar claims, *Rusis et al. v. Int'l Bus. Machs. Corp.*,
No. 18-CV-8434 (S.D.N.Y.).  (*See* Compl. ¶ 9.)

When IBM laid off employees, Plaintiff alleges, it did not provide certain disclosures "as required by the Older Workers' Benefits Protections Act ('OWBPA'), 29 U.S.C. § 626(f)(1)(H)." (*Id.* ¶ 11.)  Rather, IBM "offered the employees subject to layoff a very modest severance payment in exchange for a waiver of almost all legal claims, other than a claim under the [Age Discrimination in Employment Act ('ADEA'), 29 U.S.C. § 621 *et seq.*].  The agreement provided, however, that if the employee chose to pursue a claim under the ADEA, it would need to be in individual arbitration." (*Id.*)

Plaintiff signed the Arbitration Agreement upon her termination.  (*Id.* ¶ 12.)  The Arbitration Agreement states:

> To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim.  If the demand for arbitration is not timely submitted, the claim shall be deemed waived. The filing of a charge or complaint with a government agency or the presentation of a concern through the IBM Open Door Program shall not substitute for or extend the time for submitting a demand for arbitration.

(*Id.* ¶ 13 (the "Timing Provision"); Arbitration Agreement 5.)

The Arbitration Agreement also contains the following provision:

> Privacy and confidentiality are important aspects of arbitration.  Only parties, their representatives, witnesses and necessary administrative staff of the arbitration forum may attend the arbitration hearing.  The arbitrator may exclude any non-party from any part of a hearing.

> To protect the confidentiality of proprietary information, trade secrets or other sensitive information, the parties shall maintain the confidential nature of the arbitration proceeding and the award.  The parties agree that any information related to the proceeding, such as documents produced, filings, witness statements or testimony, expert reports and hearing transcripts is confidential information which shall not be disclosed, except as may be necessary to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its enforcement, or unless otherwise required by law or judicial decision by reason of

this paragraph.

(Arbitration Agreement 6 (the "Confidentiality Provision").)

Finally, the Arbitration Agreement provides: "Any issue concerning the validity or enforceability of this Agreement . . . shall be decided only by a court of competent jurisdiction." (Compl. ¶ 14; Arbitration Agreement 3.)

### 2.  Plaintiff's Arbitration, Subsequent Litigation

Plaintiff filed her demand for arbitration on January 18, 2019.  (*See* Arbitration Award 2.) The arbitrator dismissed Plaintiff's claim as untimely on July 22, 2019.  (*See id.* at 5.)  Moreover, the arbitrator decided that Plaintiff's filing deadline was not tolled based on the "piggybacking doctrine" because the "doctrine's applicability in a court case simply does not apply in an individual arbitration where an individual need not proceed first through the EEOC."  (*Id.* at 4.)[5]

Thereafter, Plaintiff opted into a separate matter that similarly sought to challenge the

---

[5] In broad strokes, the "piggyback doctrine" is as follows: under the ADEA, no "civil action may be commenced by an individual . . . until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]."  29 U.S.C. § 626(d)(1).  "The ADEA further requires than an EEOC charge be filed within 180 days, or 300 days for [plaintiffs who live in certain states called 'deferral states'], after the alleged unlawful practice occurred."  *Rusis*, 529 F. Supp. 3d at 198.  "Thus, while a putative plaintiff is not required to receive authorization to sue from the agency prior to commencing litigation—unlike in the Title VII context—the ADEA nevertheless sets out a statutory administrative exhaustion requirement prior to filing suit."  *Id*. at 198–99 (citing *Holland v. City of New York*, No. 10-CV-2525, 2011 WL 6306727, at *4 (S.D.N.Y. Dec. 16, 2011)).

Pursuant to this notice scheme, the Second Circuit has ruled that an EEOC charge exhausts not only the specific claims included in the EEOC charge itself but also all "reasonably related" claims that an EEOC investigation would uncover.  *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 158 (2d Cir. 2008) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359–60 (2d Cir. 2001)).  The practical effect of this holding is that "a plaintiff who failed to file his or her own EEOC charge . . . can 'piggyback' off of another person's timely filed EEOC charge that alleges 'similar discriminatory treatment in the same time frame,'" thereby allowing certain plaintiffs the ability to file a cause of action beyond the statute of limitations.  *In re: IBM Arb. Agreement Litig.*, No. 21-CV-6296, 2022 WL 2752618, at *2 (S.D.N.Y. July 14, 2022) (quoting *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 564 (2d Cir. 2006)).

enforceability of the provisions at issue in this Action.  (*See* Compl. ¶ 16.)  That Court—
specifically Judge Caproni—held that it could not adjudge the validity of the provision with
respect to Plaintiff (or the other IBM employees that similarly joined the case) because the
Arbitration Agreement "prohibits the employees from joining a class or collective action."  (*Id.* ¶
17 (citing *Rusis et al. v. Int'l Bus. Machs. Corp.*, No. 18-CV-8434 (S.D.N.Y.) (Dkt. No. 156)).)
Plaintiff was subsequently dismissed from that matter.  (*See id.* (citing *Rusis* (Dkt. No. 165)).)
Following this dismissal, Plaintiff filed this Action.

C.  Procedural History

Plaintiff filed her complaint on July 26, 2021.  (*See* Compl.)  Judges Caproni and Oetken
both denied the relatedness of this Action to other cases pending before them, (*see* Dkt. (entry on
July 28, 2021 regarding declination as not related)).  Subsequently, Judge McMahon retained this
Action.  (*See* Dkt. (entry on July 28, 2021 regarding case reassignment).)  On September 22,
2021, Judge McMahon entered a case management plan and scheduling Order.  (Dkt. No. 10.)
Pursuant to that Order, Plaintiff submitted her Motion for Summary Judgment and
accompanying papers under seal on October 28, 2021, (Pl.'s Mem.; Pl.'s Local Rule 56.1
Statement ("Pl.'s 56.1") (Dkt. No. 14); Liss-Riordan Decl.).[6]  Thereafter, Defendant submitted
its Motion to Dismiss as well as accompanying papers on November 18, 2021.  (Not. of Mot.;
Def.'s Mem.; Friedman Decl.)  Defendant also submitted its response to Plaintiff's Local Rule
56.1 Statement under seal on that same day.  (*See* Def.'s Resp. to Pl.'s 56.1 Statement ("Def.'s
56.1 Resp.") (Dkt. No. 25).)[7]  Subsequently, Plaintiff submitted a response in support of her

[6] The Court notes that Plaintiff submitted redacted public versions of these submissions
on the same day.  (*See* Dkt. Nos. 16–18.)

[7] Again, Defendant submitted a redacted public version.  (*See* Dkt. No. 26.)

Motion for Summary Judgment and in opposition to Defendant's Motion to Dismiss under seal on December 9, 2021.  (*See* Pl.'s Response Mem.)[8]  Finally, on December 23, 2021, Defendant submitted its reply.  (*See* Def.'s Reply Mem. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Reply Mem.") (Dkt. No. 35).)

Since the completion of motions practice, two developments have occurred.  First, on February 1, 2022, Judge McMahon recused from this case.  (Dkt. No. 37.)  The following day, the Action was assigned to this Court.  (*See* Dkt. (entry dated February 2, 2022 regarding notice of case reassignment).)  Second, Defendant has submitted five notices of supplemental authority. (*See* Dkt. Nos. 36, 39, 41, 42, 44.)  Plaintiff has replied three times.  (*See* Dkt. Nos. 38, 40, 43.)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

---

[8] Plaintiff submitted a redacted public version several days later.  (*See* Dkt. No. 33.)

Case 7:21-cv-06345-KMK   Document 45   Filed 09/23/22   Page 12 of 20



"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570. However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

12

B.  Analysis

Plaintiff argues that the Timing Provision is unenforceable because it extinguishes a substantive, non-waivable right pursuant to the ADEA.  (*See* Compl. ¶¶ 21–23; Pl.'s Mem. 11–21; Pl.'s Response Mem. 7–16.)  IBM rebuts this argument, asserting that the time limitation is not a substantive right but a procedural right and therefore the timing requirements laid forth in the Arbitration Agreement are enforceable.  (Def.'s Mem. 10–23; Def.'s Reply Mem. 2–8.) Plaintiff also argues that the Confidentiality Provision is unenforceable insofar as its purported "aggressive[] use[]" by IBM severely "impede[s] its former employees from advancing their claims in arbitration under the ADEA."  (Pl.'s Mem. 21; *see also id.* 21–30; Pl.'s Response Mem. 18–38.)  Defendant contends that the Court should altogether forego addressing the confidentiality issue because Plaintiff's underlying claims are time barred, rendering any such adjudication thereof moot, and because, on the merits, Plaintiff's arguments are lacking.  (*See* Def.'s Mem. 23–32.)

Setting aside these arguments momentarily, because "[s]ubject-matter jurisdiction cannot be forfeited or waived," *Iqbal*, 556 U.S. at 671, and because the Court "ha[s] an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party," *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 502 (2006), the Court first considers whether it has subject-matter jurisdiction to adjudicate this Action.

Plaintiff invokes only the Court's federal question subject-matter jurisdiction, 28 U.S.C. § 1331, under the DJA, 28 U.S.C. §§ 2201–2202, (*see* Compl. ¶ 5).  By statute, the DJA invests the judiciary with the authority to "declare the rights and other legal relations of any interested party seeking such declaration" in "a case of actual controversy within its jurisdiction."  28 U.S.C. § 2201.  That the dispute in question has already been effectively put to rest by an

13

arbitrator and that Plaintiff failed to follow the necessary steps to vacate such an award guides

the Court's determination that it would be inappropriate for the Court to exercise its discretion

and grant any relief under this provision to Plaintiff. *See In re: IBM*, 2022 WL 2752618, at *3–5

("declin[ing] to exercise jurisdiction to resolve . . . claims" of similarly situated plaintiffs

alleging identical arguments of unenforceability of an identical arbitration award).

### 1.  The DJA

"[T]he fundamental purpose of the DJA is to 'avoid accrual of avoidable damages to one

not certain of his rights and to afford him an early adjudication without waiting until his

adversary should see fit to begin suit, after damage has accrued.'" *United States v. Doherty*, 786

F.2d 491, 498 (2d Cir. 1986) (quoting *Luckenbach Steamship Co. v. United States*, 312 F.2d 545,

548 (2d Cir. 1963)).  In other words, a court's power pursuant to the DJA is to issue

"[d]eclaratory relief [as] a prospective remedy intended to resolve or mitigate disputes that may

yield later litigation." *EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F.

Supp. 3d 89, 99 (S.D.N.Y. 2018).

The Court's authority to mete out such "prospective relief" is not unfettered; rather, like

questions of standing, a declaratory judgment demands that the plaintiff demonstrate "a

sufficient likelihood that he [or she] will again be wronged in a similar way" as well as "a

'certainly impending' future injury." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir.

2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (emphasis omitted); then

quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)); *see also Duane Reade, Inc. v. St. Paul

Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005) (observing that claims "in a

declaratory judgment action" are only "ripe[ ]" where "there is a substantial controversy,

between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment"). "[A] touchstone to guide the probe for sufficient immediacy and reality is whether the declaratory relief sought relates to a dispute where the alleged liability has already accrued or the threatened risk occurred, or rather whether the feared legal consequence remains a mere possibility." *Wilmington Tr., Nat'l Ass'n v. Est. of McClendon*, 287 F. Supp. 3d 353, 364 (S.D.N.Y. 2018) (citation omitted).

Even assuming such requirements are met, the DJA does not confer "an absolute right upon the litigant.'" *John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*, No. 11-CV-5453, 2011 WL 5245192, at *4 (S.D.N.Y. Nov. 2, 2011) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)). The operative provision reads: a court "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). As a result, this provision "has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (quoting *Wilton*, 515 U.S. at 286). The Second Circuit has echoed this view, stating that *"*[c]ourts have consistently interpreted [the] permissive language [of the DJA] as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." *In re: IBM*, 2022 WL 2752618, at *4 (alterations in original) (quoting *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003) (per curiam))).

"To decide whether to entertain a declaratory judgment action, courts in this circuit should consider: '(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty.'" *Parker v. Citizen's Bank, N.A.*, No. 19-CV-1454, 2019 WL 5569680,

at *4 (S.D.N.Y. Oct. 29, 2019) (quoting *Duane Reade*, 411 F.3d at 389); *see also Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969) (endorsing consideration of the same factors).[9]  Such considerations foreclose the possibility of issuing a declaratory judgment "to determine whether rights already adjudicated were adjudicated properly." *Doherty*, 786 F.2d at 498.

### 2.  Applying the DJA in this Action

Given the limitations on the Court's discretionary authority as well as the considerations the Court is to evaluate in choosing whether the exercise its authority where appropriate, the Court finds that "it is not appropriate to entertain jurisdiction over [Plaintiff's] claims." *In re: IBM*, 2022 WL 2752618, at *4.  The facts giving rise to this Action—and specifically Plaintiff's actions vis-à-vis the arbitration—bear this out.

Plaintiff was terminated on June 30, 2018.  (*See* Arbitration Award 1.)  Upon her termination, she signed the Arbitration Agreement, which states that "any issue concerning the validity or enforceability of this Agreement . . . shall be decided only by a court of competent jurisdiction." (Arbitration Agreement 3.)  Nonetheless, Plaintiff directed this challenge to the arbitrator, (*see* Arbitration Award 2–4), and did so in an untimely fashion: 180 days from her termination was December 27, 2018, and Plaintiff filed her demand for arbitration on January 18,

---

[9] The Second Circuit has also implicitly endorsed consideration of additional factors that other circuits have demanded district courts therein consider, including "(1) whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'; (2) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (3) whether there is a better or more effective remedy." *Dow Jones*, 346 F.3d at 359–60 (citations omitted).  These additional factors do not change the Court's substantive analysis in this Action; therefore the Court does not expound upon them.

2019, (*see id.* at 2).  The arbitrator dismissed Plaintiff's claim as untimely on July 22, 2019.  (*See id.* at 5.)

Plaintiff then failed to file a vacatur motion challenging the validity of the Timeliness Provision.  (Def.'s Mem. 4; *see also* Pl.'s Response Mem. 16–18 (failing to dispute this point).)  Instead, Plaintiff waited for just over two "years after [she] received [her] arbitration decision[] to initiate this [A]ction for declaratory relief challenging the enforceability of two provisions of [her] [A]rbitration [A]greement[]," meaning "the window to challenge those rulings, or the enforceability of the provisions that governed them, has long since closed."  *In re: IBM*, 2022 WL 2752618, at *4–5 (citations omitted).

As a result, there exists no possibility of an impending "dispute[] that may yield later litigation," *EFG Bank*, 309 F. Supp. 3d at 99, nor is there any "uncertainty" in the Parties' legal rights that such a judgment would elucidate, *Duane Reade, Inc.*, 411 F.3d at 389.  Exercising jurisdiction "may resolve some of the legal relations in issue, [but] it will not resolve them all, nor is it likely to terminate the controversy giving rise to the proceeding."  *Am. Home Assurance Co. v. Babcock & Wilcox Co.*, No. 06-CV-6506, 2007 WL 4299847, at *7 (E.D.N.Y. Dec. 6, 2007) (declining to exercise jurisdiction under such circumstances); *see also Wilton*, 515 U.S. at 280–81 (affirming lower courts' decisions to decline declaratory judgment action to avoid piecemeal litigation, forum shopping, and duplicative proceedings); *Panama Processes S.A. v. Cities Serv. Co.*, 362 F. Supp. 735, 738 (S.D.N.Y. 1973) ("[T]he declaratory judgment remedy should not be accorded, however, to try a controversy by piecemeal, or to try particular issues without settling the entire controversy." (quotation marks omitted)).  Thus, declaratory judgment would not serve a "useful purpose."  *Duane Reade, Inc.*, 411 F.3d at 389.  Because the Court finds such an exercise of its discretionary authority inappropriate, Plaintiff's claims are

dismissed.  *See In re: IBM*, 2022 WL 2752618, at \*5 ("declin[ing] to exercise jurisdiction to

resolve [similarly situated plaintiffs'] claims"); *Parker*, 2019 WL 5569680, at \*3–5 (declining to

exercise jurisdiction over a DJA claim made by a similarly situated plaintiff where the

"[d]eclaratory relief [sought] . . . would not resolve any ongoing or impending harm to [the]

[p]laintiff vis-à-vis her relationship with [the] [d]efendants" and "would not clarify any

uncertainty in the parties' legal relations"); *see also Dow Jones & Co. v. Harrods, Ltd.*, 237 F.

Supp. 2d 394, 437–39 (S.D.N.Y. 2002) (declining to exercise jurisdiction over a DJA claim

because, inter alia, the "[c]ourt [wa]s not persuaded . . . the declaratory relief [sought] would . . .

serve a useful purpose in clarifying the legal relations between the parties"), *aff'd*, 346 F.3d

357.[10]

---

[10] Despite finding that the Court should not exercise its discretion, the Court nonetheless feels it appropriate to proclaim its agreement with multiple other district courts to have concluded that "there is no merit to Plaintiff['s] claim that the Timeliness Provision is unenforceable," *In re: IBM*, 2022 WL 2752618, at \*6; *see also Chandler v. Int'l Bus. Machs. Corp.*, No. 21-CV-6319, 2022 WL 2473340, at \*3–7 (S.D.N.Y. July 6, 2022) (concluding that "the plaintiff's argument that the Timing Provision is unenforceable fails").  More specifically, the Court concurs that "the purported right to take advantage of the piggybacking rule is not a substantive, non-waivable right protected by the ADEA" nor is it a "part of the statute of limitations law of the ADEA."  *Chandler*, 2022 WL 2473340, at \*4–5; *see also Rusis*, 529 F. Supp. 3d at 192 n.4 ("Former employees who wished to pursue ADEA claims in arbitration pursuant to [the Agreement] were not required to file a charge of discrimination with the EEOC. Plainly, then, the piggybacking doctrine is wholly inapplicable in the arbitration context.").  The Court also agrees that Plaintiff's reliance on two sixth Circuit cases is inapposite, as such cases "did not extend to the context of arbitration agreements."  *Chandler*, 2022 WL 2473340, at \*6 (citing *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 839 (6th Cir. 2019)).

Finally, notwithstanding that this finding would render any discussion of the Confidentiality Provision moot, *see id.* at \*7 n.4, the Court, engaging in one more layer of hypothetical analysis "for the sake of completeness," *id.*, would find no fault in the reasoning articulated in the *Chandler* decision and would thus adopt the conclusion that "the Confidentiality Provision is neither procedurally unconscionable nor substantively unconscionable under New York law," *id.* at \*8.

III.  Conclusion

For the foregoing reasons, Defendant's Motion is granted.  Accordingly, Plaintiff's

Motion for Summary Judgment is denied as moot.  *See, e.g.*, *Northwell Health, Inc. v. Lexington*

*Ins.*, No. 21-CV-1104, 2021 WL 3163273, at *1 (S.D.N.Y. July 7, 2021) ("[T]he Court grants

the [defendant's] motion to dismiss and denies the [plaintiff's] motion for partial summary

judgment as moot."); *Markham v. Rosenbaum*, No. 20-CV-6039, 2020 WL 3316099, at *11

(W.D.N.Y. June 18, 2020) ("Because the Court dismisses the claims . . . [the] [p]laintiff's motion

for summary judgment . . . is DENIED AS MOOT.") (capitalization in original), *appeal*

*dismissed*, No. 20-2223, 2021 WL 3027159 (2d Cir. May 13, 2021).

Plaintiff has not requested leave to amend her complaint nor has she suggested that there

exist any additional facts that could remedy the above-mentioned substantive problems;

accordingly, Plaintiff's claims are also dismissed with prejudice.  *See Gallop v. Cheney*, 642

F.3d 364, 369 (2d Cir. 2011) (holding that dismissal with prejudice is proper where there is no

indication the plaintiff could provide additional allegations leading to a different result); *Cuoco*

*v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that where the infirmities of a plaintiff's

complaint are "substantive," "better pleading will not cure it" such that "[r]epleading would thus

be futile"); *see also In re: IBM*, 2022 WL 2752618, at *12 (declining to exercise jurisdiction

over all post-arbitration claims, granting the defendant's motion to dismiss, denying as moot the

plaintiffs' summary judgment motion, and denying the plaintiffs' motion for leave to amend).

19

The Clerk of Court is respectfully directed to enter judgment for Defendant, terminate all

pending Motions, (Dkt. Nos. 13, 16, 23), and close this case.

SO ORDERED.

Dated:   September 23, 2022
         White Plains, New York

_____
            KENNETH M. KARAS
         United States District Judge